In the District Court of the United States
For the District of South Carolina
**CHARLESTON DIVISION**

RECEIVED
USDC CLERK, CHARLESTON, SC
2005 JUL 11  P 4:05

| | |
|---|---|
| JESSE RIVERA, ) | CIVIL ACTION NO. 2:04-21770-CWH-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| DAVID BRELAND, ) | OF THE MAGISTRATE JUDGE |
| RUDOLPH BRELAND, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

The Plaintiff, Jesse Rivera ("Plaintiff"), brought this action *pro se* against David Breland and Rudolph Breland (collectively, "Defendants") claiming control of his deceased daughter's remains located in Hattiesburg, Mississippi. The Defendants responded *pro se* as well.

Pursuant to provisions of Title 28, United States Code § 636, and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters involving *pro se* litigants and submit findings and recommendations to the District Court.

## II. FACTUAL BACKGROUND



The Plaintiff's daughter, Nilda Rivera Valentine Breland (the "Deceased"), died in a car accident in Louisiana on April 22, 1997. The Deceased was buried in Hattiesburg, Mississippi with other members of her in-law's family. The Defendants are the Deceased's husband, David Breland ("Husband"), and David's father, Rudolph Breland ("Father-In-Law"). The Plaintiff resides in Mount Pleasant, South Carolina; the Husband resides in Baton Rouge, Louisiana; the Father-In-Law resides in Ovett, Mississippi.

1

The catalyst of the immediate action seems to stem from an occurrence on August 15, 2003, when the Plaintiff learned that the Husband and the Deceased had been named in a mortgage foreclosure action over the unpaid balance of their home in Livingston, Louisiana. The Plaintiff unsuccessfully bid upon the property at the Sheriff's sale on October 29, 2003.[1]

On December 3, 2003, the Plaintiff contracted with Moore's Funeral Home to exhume and transport the Deceased to a mortuary in Jackson, Mississippi.[2] Upon arrival the Plaintiff wanted the Deceased cremated; the ashes were then to be sent to Mount Pleasant, South Carolina.

Acting in his capacity as the Chairman of the Mount Olive United Methodist Church Cemetery Committee, the Father-In-Law reported a "theft of a body" (the Deceased) to the Jones County Sheriff's Department. [7-1] Officer Carl Moak responded and ordered the recipient mortuary in Jackson not to cremate the Deceased.

With counsel, the Plaintiff initiated an action in Jones County Chancery Court in Laurel, Mississippi to request an injunction to prohibit any further interference in the Plaintiff's burial plans for the Deceased. The suit went in front of Judge McKenzie in March 2004. The Judge urged the attorneys to work out a solution between the parties without the Court's assistance. The parties were unable to come to an agreement.

The Plaintiff then instructed his counsel to drop the suit in Mississippi because the Plaintiff learned that the Husband lived in Louisiana. Subsequently, the Plaintiff filed suit in a Louisiana Court; however, the Defendants had not consented to dismissal of their counter-claims in Mississippi and provided evidence of the ongoing Mississippi trial in front of the Louisiana

---

[1] Ostensibly the Plaintiff went to the sale to protect a financial interest in the Deceased's estate. The Plaintiff eventually collected $11,548.27 less 2/3 of the costs from the sale of the Deceased's property as a creditor.

[2] It is unclear from the file what led to this hasty step. However, the court suspects it is the progeny of the finances concerning the foreclosure.

2

Court. [1-1; exhibit 7] The Louisiana Court dismissed that action in lieu of the ongoing action in Mississippi.

With proceedings still pending in Mississippi, the Plaintiff filed a *pro se* complaint in the District of South Carolina, Charleston Division on August 4th, 2004. [1-1] The *pro se* Defendants answered in a timely fashion setting forth a myriad of jurisdictional defenses and cross-claims for damages in the amount of $7,736 plus compensation for non-pecuniary damages. [7-1] The Plaintiff's response alleged damages amounting to $500,080.00. [11-1]

On September 29, 2004, the Mississippi Chancery Court entered a default judgment against the Plaintiff. Judge McKenzie held that the Husband had the "right to choose an appropriate burial site for his wife which he did. [and] The Plaintiff was present at her burial and did not protest." [17-1; exhibit 7]. The judge also ordered the Plaintiff to pay the cost of re-interment and pain and suffering totaling $65,508.91. The Plaintiff appealed the decision to the Supreme Court of Mississippi. [19-1; exhibit1] On June 16, 2005, the Mississippi Supreme Court upheld the Chancery Court's decision against the Plaintiff.

### III. PROCEDURAL HISTORY

The present claim was originally filed in this Court on August 4, 2004. The Plaintiff brought the action pursuant to 28 U.S.C. § 1332. [1-1] The Plaintiff requested this Court order: (1) that the Mississippi Chancery Court case be transferred to this District Court; (2) that Central Mississippi Mortuary proceed with cremation of the Deceased and have the ashes sent to the Plaintiff; and (3) that the Defendants pay reasonable attorney fees and the costs Plaintiff incurred. [1-1]

The Defendants answered this complaint jointly on September 10, 2004, with a motion to dismiss and in the alternative a claim for special damages. [7-1; 8-1] The motion to dismiss was based upon lack of diversity, lack of subject matter jurisdiction, improper venue, insufficient process, lack of personal jurisdiction, failure to state a claim for which relief can be granted, and fraud. The Defendants then requested damages for pain and suffering, attorney fees ($3,000),

3

and property damage ($4,736.89). [7-1] Plaintiff responded to this motion on October 6, 2004, denying each jurisdictional claim and eventually claiming $500,080 in damages. [11-1]

The Plaintiff also filed a motion for summary judgment against the Father-In-Law on September 15, 2004. [9-1] Plaintiff moved for summary judgment upon the grounds that the Father-In-Law "failed to answer or otherwise plead in a timely manner" to Plaintiff's original complaint. [9-1] The Father-In-Law answered this motion within the required 34 days. [13-1] The Father-In-Law claims that his response was timely because he and the Husband filed their defense jointly and the Husband did not receive the claim until August 26, 2004. The clerk's calendar required an answer from the Father-In-Law by September 9, 2004, but it required an answer from the Husband by September 15, 2004, due to an incorrect mailing address. [5-1; 6-1] The answer to the original complaint was filed jointly on September 10, 2004. [7-1]

The Defendants then filed their own motion for summary judgment, sanctions, and answer to the Plaintiff's request for special damages on November 30, 2004. [17-1] The Defendants' motion for summary judgment was based solely on their previous arguments put forth in their first motion to dismiss. [17-1; see 7-1] The Defendants also requested sanctions be imposed upon the Plaintiff for "a frivolous action brought only to harass the defendants." [17-1] They also answered the Plaintiff's claim for special damages [11-1] by denying the "legal merit" of any of his claims. [17-1] The Plaintiff answered on December 15, 2004, claiming that answers, or reply to answers are limited to "five days from date of service under rule 5."[3] [19-1] According to this the Plaintiff "reiterates" his motion for summary judgment against the Father-In-Law defendant. [19-1] The Plaintiff denied any factual allegations and claims that the Defendants' response should be cast aside due to its tardiness. [19-1]

---

[3] Local Rule 7.07 D.S.C. gives a five day time period for a party filing a reply to a response. The Plaintiff mistakenly equates an answer or response to a motion with a reply to a response.

4

## IV. *PRO SE* PLEADINGS

Both parties to this action are *pro se*. Therefore, all pleadings have been accorded liberal construction, as *pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 8 (1980) (*per curiam*). A federal district court is charged with liberally construing pleadings filed by *pro se* litigants to allow the development of a potentially meritorious case. See Hughes, 449 U.S. at 8; Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the litigant's legal arguments for them (Small v. Endicott, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1275, 1278 (4th Cir. 1985), *cert denied*, 475 U.S. 1088 (1986). It is well-settled that federal courts are not required to be "mind readers" for *pro se* litigants. Id. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim in a federal district court. Weller v. Dept. of Soc. Serv., 901 F.2d 387 (4th Cir. 1990).



The Court has thoroughly reviewed the pleadings, keeping in mind its obligation to liberally construe Plaintiff's Complaint to allow the development of a potentially meritorious case. See Cruz, 405 U.S. 319.

## V. ANALYSIS

### A. Res Judicata (Claim Preclusion)

Res judicata procedurally bars "the assertion of a claim after a judgment on the merits in a prior suit by the parties or their privies based on the same cause of action." Martin v. Am. Bancorporation Ret. Plan, 407 F.3d 643, 650 (4th Cir. 2005). Title 28, U.S.C. § 1738 ensures that

a state court decision "shall have the same full faith and credit in every court within the United States[.]" In order to avoid endless litigation in different forums "a party's state court judgment has the same preclusive effect in federal court that the judgment would have in state court." Sea Cabin on the Ocean IV Homeowners Assn., v. City of Myrtle Beach, 828 F.Supp. 1241, 1248 (D.S.C. 1993). Res judicata is a necessary limitation within a mature jurisprudence.

In South Carolina, res judicata "bars subsequent actions by the same parties when claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." See Sea Cabin, 828 F.Supp. at 1249. Three elements are required to be shown for res judicata: "(1) the identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit." Id. If these requirements are met, the claim will not be relitigated.

The Plaintiff originally brought this action in the Chancery Court in Jones County, Mississippi in March 2004. This action was decided on September 29, 2004, in which Judge McKenzie of the Chancery Court entered a judgment against the Plaintiff. [17-1; exhibit 7] The Plaintiff appealed the decision to the Mississippi Supreme Court. The Supreme Court affirmed the Chancery Court's decision on June 16, 2005.[4] During the ongoing action in Mississippi the Plaintiff initiated the same action in this court on August 4, 2004.

In the present case, the litigants are the same in both suits; the claim arises out of the same facts; and there has been a final decision rendered upon the merits of the claim. All of the elements of res judicata have been met. See Sea Cabin, 828 F.Supp. at 1249. Even viewing this case through a lenient *pro se* lens, the Plaintiff cannot be granted an exception to a fundamental principle. In order to guarantee full faith and credit to a decision of a court of the United States, the immediate cause of action should be dismissed. 28 U.S.C. § 1738.

---

[4] On July 5, 2005, Plaintiff sent a letter to this Court stating that he wished to appeal the September 29, 2004 Order entered by the Chancery Court in Mississippi and affirmed by the Mississippi Court. [20-1] Of course, this Court lacks jurisdiction to entertain such an appeal.

## VI. RECOMMENDATION

For the aforementioned reasons, it is recommended that the **Plaintiff's Complaint [1-1] should be dismissed.** The **Defendants' Motion to Dismiss [7-1]** and **Defendants' Motion for Summary Judgment [17-1] should be granted.** The **Plaintiff's Motion for Summary Judgment [9-1] should be denied.** The **Defendants' Motion for Sanctions [17-2] should be denied.**

George C. Kosko
United States Magistrate Judge

July //, 2005
Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
